**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ALBERT M. LAPOINTE,

                              Plaintiff,         1:16-CV-1441
v.         (LEK/CFH)

DAVID ELLIS, Tax Payer Services Rep.,
also known as DAVID A. ELLIS; NEW
YORK STATE DEPARTMENT OF
TAXATION AND FINANCE,

                              Defendants.

---

**APPEARANCES:**                        **OF COUNSEL:**

Albert M. LaPoint
21 Woodridge Street
Albany, New York 12203
Plaintiff pro se

**REPORT-RECOMMENDATION AND ORDER**

**I. Background**

On December 13, 2016, the undersigned recommended dismissal of plaintiff's complaint without prejudice, noting that, although plaintiff contended that he sought to bring an action against his former supervisor and employer for violations of the Age Discrimination in Employment Act of 1967, as amended (ADEA), 29 U.S.C. § 621, et seq., plaintiff merely provided that he was terminated and subjected to unequal terms of employment due to his age. See Dkt. No. 1 at 2; Dkt. No. 4. The undersigned noted that plaintiff did "not provide any facts by which the Court can assess the merits of his claims or even determine *how* the defendants subjected him to unequal terms/conditions of employment or provide[] any details on his termination in order for

the Court to assess whether either defendant plausibly discriminated against him in violation of the ADEA." Id. at 4-5. On April 5, 2017, Senior District Judge Lawrence E. Kahn adopted the Report-Recommendation and Order. Dkt. No. 14.

## II. Review of Amended Complaint

### A. Amended Complaint

Plaintiff filed an amended complaint on January 5, 2017. Dkt. No. 8. On February 2, 2017 plaintiff filed a "supplement" to the amended complaint. Dkt. No. 9. In April 8, 2017, plaintiff filed a letter regarding certain evidence. Dkt. No. 10. On March 27, 2017, plaintiff filed an additional submission detailing his employment difficulties. Dkt. No. 12. On March 31, 2017, plaintiff filed various employment-related documents. Dkt. No. 13. On April 5, 2017, plaintiff filed a letter regarding a conference that appeared to have been held on July 23, 2016 before the New York State Division of Human Rights relating to his termination. Dkt. No. 15. On June 7, 2017, plaintiff filed an additional letter relating to an apparent July 29, 2016 conference with David Ellis, Elgin Taylor, Stacey Paul, and Kimberly Boucher Furnish. Dkt. No. 16.

Presently pending before the Court is review of plaintiff's amended complaint pursuant to Section 1915(e) of Title 28 of the United States Code. See Dkt. No. 8. Giving plaintiff due solicitude, the undersigned will consider together the documents filed at docket numbers 8 and 9 together as the amended complaint. Dkt. No. 8, 9. Further, the undersigned will consider docket numbers 12, 13, and 15 as supplements to the amended complaint.

2

Plaintiff provides that he is currently "a [sic] American Caucasian male aged 71" and was "some twenty years older than his supervisor David Ellis." Dkt. No. 8. This statement is the only direct reference plaintiff makes to his age and the only indication within the amended complaint to arguably suggest that any adverse consequences occurred because of his age. See generally id. On multiple occasions, plaintiff expresses his personal belief that Ellis was not sufficiently qualified to be a supervisor, and that plaintiff was more qualified than Ellis.[1] Plaintiff also states that he does not believe that decision to terminate him was made by Ellis: "the effort to terminate my employment while on probation was in itself not orchestrated by Mr. Ellis. Mr. Ellis himself was in my estimation a [sic] honest caring civil servant who was told to fire me by hire [sic] ups who [sic]." Dkt. No. 8 at 5.[2] However, plaintiff also appears to suggest that the decision to terminate was Ellis'. See Dkt. No. 9 at 9 ("I was let go for being aged by a supervisor who was frustrated and did everything to make himself look good at my expense."); Dkt. No. 8 at 5 ("The performance appraisal from my supervisor David Ellis, TSR2 at the Taxpayer Compliance & Collections Division was what resulted in my termination."). Further, plaintiff suggests that Ellis, together with Michael Wilson,[3]

---

[1] Plaintiff provides that Ellis "previously worked as a bartender and has a degree in music[,]" "Ellis was promoted to a supervisor before he was mature enough to be in the job. Ellis is articulate & well spoken but hardly competent to make decisions regarding hiring and firing"; "My supervisor was a bartender prior to becoming supervisor at tax compliance"; "please look at Mr. Ellis['] previous supervisory pedigree"; "Mr. Ellis lacks Mr. LaPointe's credentials as a [sic] insurance specialist licensed real estate agent, Mortgage Banker, experience NMLS credentials"; "Ellis was frequently absent or ill[.] Lacked motivation & assigned all duties to others"; "LaPointe also worked at IRS Dept. of Treasury[.] He should be supervising Ellis." Dkt. No. 8 at 2, 3; Dkt. No. 9 at 3, 10; Dkt. No. 13 at 9.

[2] Dkt. No. 8 cuts off here, mid-sentence. Dkt. No. 8 at 5.

[3] Michael Wilson is not a named defendant herein. Plaintiff merely provides that "Michael Wilson was David Ellis['] supervisor[.]" Dkt. No. 9 at 4.

3

looked for ways to terminate plaintiff and eventually terminated him (1) as a way for Ellis to "look good" because Ellis was missing work due to personal problems; and (2) as a means to distract others, potentially Ellis' supervisors, from his inappropriate use of work time and work computers for personal reasons. Dkt. No. 9 at 1; Dkt. No. 13 at 9; Dkt. No. 16 at 1.

Plaintiff further alleges that he suffered a hostile work environment. Specifically, plaintiff contends that Ellis once threatened to throw him up against filing cabinets. Dkt. No. 9 at 10. He contends that he was "subjected to harassment and treated unfairly," but does not provide any additional details regarding the harassment or unfair treatment. Dkt. No. 8 at 4. Plaintiff suggests that he faced adverse employment action due to certain of his physical impairments. Plaintiff provided he was "singled out because of my hearing loss 100% dead ear on left side, no effort was made to assist me or help me with this was it age discrimination – maybe but one thing is for sure I was the butt of jokes by my coworkers & made to feel inferior." Dkt. No. 8 at 5. Plaintiff never alleges that the "singling out" or his coworkers' comments were due to his age.

Plaintiff also makes general allegations of disparate treatment. Plaintiff does not state that Ellis treated less him favorably than his coworkers due to his age. Instead, plaintiff again seems to suggest that his less favorable treatment was due to his physical impairments, or that he was somehow targeted as "weaker" due to his physical limitations. Specifically, plaintiff contends that other employees supervised by Ellis "were milking sick time, salary and the taxpayers of NY State. They continued to milk the system & he let them get away with being malingerers. I was a victim because I

4

never defended myself and was suffering from hearing loss and amnesia." Dkt. No. 12 at 1.[4]  He also argues that "other employees at the Dept. were given more time to correct and Improve their performance metrics subsequent to failing their initial probationary period."  Dkt. No. 15 at 2.  In an undated document that appears to be a letter from plaintiff to "Dept of Taxation and Finance Attorney Kimberly Boucher Furnish," plaintiff suggests that other probationary employees, apparently who were supervised by Barry, a different supervisor, were given greater flexibility in completing their probationary period than Ellis provided him:  "like the guy that got a second chance from management to comeback [sic] and do training again. [sic] to complete his probationary period.  Or the lady whose mom passed away and was given a chance to comeback [sic] the following year to complete probation.  Dkt. No. 15 at 4.

Plaintiff also submits a variety of other documents.  On a form that appears to list names and certain documents from May 2014, plaintiff writes that he was "under medication heavily medicated while coerced to sign."  Dkt. No. 13 at 2.  However, plaintiff does not explain these documents' relevance.  Id.  Plaintiff also submits various performance reviews, "Kudos," and certificates of excellence from 2009-2010.  Dkt. No. 9 at 3-7; Dkt. No. 12 at 3; Dkt. No. 13 at 3-8, 10, 13.  Finally, as for damages, plaintiff contends that he lost two years of salary "totaling more than $60,000."  Dkt. No. 8 at 4.

## B.  Legal Standards

---

[4] Elsewhere in plaintiff's submissions, rather than contend he suffers from amnesia, he provides that he suffered from anemia.

5

The ADEA "makes it unlawful for an employer to 'fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" Chang v. City of New York Dep't for the Aging, 11-Civ-7062 (PAC/JLC), 2012 WL 1188427, at *5 (S.D.N.Y. Apr. 10, 2012) (quoting 29 U.S.C. § 623(a)(1)). To establish a prima facie case of age discrimination, a plaintiff must show four things: (1) he is a member of the protected class; (2) he is qualified for his position; (3) he has suffered an adverse employment action; and (4) the circumstances surrounding that action give rise to an inference of age discrimination." Ireton-Hewitt v. Champion Home Builders, Co., 501 F. Supp 2d 341, 350 (N.D.N.Y. 2007) (quoting Carlton v. Mystic Transp. Inc., 202 F.3d 129, 135 (2d Cir. 2000)); Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456 (2d Cir. 2001).[5] To set forth a claim of a hostile work environment under the ADEA, a plaintiff must show that he or she "experienced harassment 'sufficiently severe or pervasive to alter the conditions of [his] employment . . . and create an abusive working environment." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)). The plaintiff must also show "'that a specific basis exists for imputing the objectionable conduct to the employer.' Id." Wheeler v. Bank of New York Melon, __ F. Supp. 3d __, 2017 WL 2589362, at *8 (N.D.N.Y. June 14, 2007). Further, in assessing a hostile work

---

[5] Similarly, to demonstrate prima facie disparate treatment, a plaintiff must show that: '(1) that [he] was a member of a protected class, (2) that [he] was qualified for the position, (3) that [he] experienced an adverse employment action, (4) under circumstances giving rise to an inference of discrimination.'" Murphy v. Gen. Elec. Co., 245 F. Supp. 2d 459, 471 (N.D.N.Y. 2003) (quoting Brennan v. Metropolitan Opera Ass'n, 192 F.3d 310, 316 (2d Cir. 2001)).

environment claim, "a court must have 'some reason to believe' that the incidents it considers were 'motivated by the plaintiff's [protected characteristics].'" Id. (quoting Sanderson v. N.Y. State Elec. & Gas Corp., 560 F. App'x 88, 92 (2d Cir. 2014)).

Under the HRL, "a plaintiff must show, among other things, that he was discriminated against because of his age." Russo v. Sysco Food Services of Albany, L.L.C., 488 F.Supp. 2d 228 (N.D.N.Y. 2007) (citing N.Y. Exec. Law 296(1) (McKinney 2005)). "Age claims brought pursuant to the HRL are subject to the same analysis as claims under the ADEA." Morris v. Charter One Bank, F.S.B., 275 F. Supp. 2d 249 at n.7 (N.D.N.Y. 2003) (citing Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001), cert. denied, 534 U.S. 993 (2001)).

As stated in the December 13, 2016 Report-Recommendation and Order, though plaintiff need not, at this early stage, plead a prima facie case of discrimination, "he or she must still give fair notice of the basis of his or her discrimination claims and those claims must be facially plausible." Dkt. No. 4 at 4 (citing Hyde v. GKN Aerospace, No. 5:12-CV-0295 (NAM/DEP), 2012 WL 3043161, at *3 (N.D.N.Y. Apr. 27, 2012)).

### C. Discussion

Plaintiff attempts to sue defendant David Ellis, his supervisor, under the ADEA. The ADEA does not allow for individual liability. See Spiegel v. Schulmann, 604 F.3d 72, 79 (2d Cir.2010) (per curiam) ("[I]n the context of employment discrimination, the retaliation provision of the ADEA, which explicitly borrows the remedies set forth in [42 U.S.C.] § 2000e–5, cannot provide for individual liability."); Edwards v. Onondaga

7

Community College, 14-CV-1329 (MAD/DEP), 2015 WL 224783, at *8 (N.D.N.Y. Jan. 15, 2015) (dismissing ADEA claims against individual defendants because it is "well established that there is no individual liability under the ADEA.") (citing Guerra v. Jones, 421 F. App'x 15, 17 (2d Cir. 2011)).  Accordingly, it is recommended that all claims against Ellis arising under the ADEA be dismissed with prejudice.

Plaintiff's ADEA claim against the New York State Department of Taxation and Finance must also fail.  As a state agency, the New York State Department of Taxation and Finance is entitled to Sovereign Immunity under the Eleventh Amendment, and it is settled that the "Eleventh Amendment has not been abrogated for purposes of the . . . . ADEA."  Nicolae v. Office of Vocational and Educational Services for Individuals with Disabilities, 257. F. App'x 456-57 (2d Cir. 2007) (citations omitted).  As there is no indication that the State has waived its sovereign immunity with respect to the ADEA, it is recommended that this claim also be dismissed with prejudice.

Even if sovereign immunity were not a bar to the underlying ADEA claims against the New York State Department of Taxation and Finance, "the Eleventh Amendment bars claims for money damages against state agencies . . . under the ADEA."  Clark v. New York State Office of the State Comptroller, 09-CV-716 (GLS/DRH), 2010 WL 3909093, at *2 (N.D.N.Y. Sept. 30, 2010) (citing Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 91 (2000)).   Similarly, "the Eleventh Amendment bars imposition of any damages pursuant to the New York Human Rights Law." Ettinger v. State University of New York State College of Optometry, 95 Civ. 9893 (RWS), 1998 WL 91089, at *8 (S.D.N.Y. Mar. 2, 1998).  Plaintiff's only demand for relief is $60,000, which he appears to suggest

8

represents certain lost wages.  As the New York State Department of Taxation and Finance is a New York State agency, and plaintiff demands only monetary damages, and such damages cannot be awarded under the ADEA or the HRL, it is recommended that plaintiff's claims for monetary damages against the New York State Department of Taxation and Finance be dismissed with prejudice.  Clark, 2010 WL 3909093, at *2.

Arguably, a liberal reading of plaintiff's amended complaint could suggest that plaintiff is attempting to state a claim under the Americans with Disabilities Act ("ADA"), as he indicates that he suffered from hearing loss in his left ear, and "no effort was made to assist or help [him] with this."  Dkt. No. 8 at 5.[6]  However, plaintiff cannot bring an ADA claim against the New York State Department of Taxation and Finance as the State agency's "sovereign immunity under the Eleventh Amendment has not been abrogated for purposes of the ADA."  Nicolae, 257. F. App'x at 456-57 (citations omitted).   There is also no individual liability under the ADA.  See Boyd v. Broome Community College, 14-CV-397 (GTS/DEP), 2015 WL 6962498, at *6, n.4 (N.D.N.Y. Nov. 10, 2015).  Thus, even if plaintiff had raised an ADA claim, he also could not

---

[6] A plaintiff asserting a violation of the ADA must demonstrate that:

> (1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability.

Kinneary v. City of N.Y., 601 F.3d 151, 156 (2d Cir.2010) (internal quotation marks omitted).

proceed with this claim against defendant Ellis.[7]  Accordingly, to the extent plaintiff's complaint could be interpreted as raising an ADA claim against Ellis and the New York State Department of Taxation and Finance, such claims cannot stand.

Because the undersigned recommends dismissal of all of plaintiff's federal claims raised in the amended complaint, it is recommended that the Court decline to accept supplemental jurisdiction of his only remaining state law claim, Ellis' alleged violation of the HRL.  See Cuoco v. Mortisugu, 222 F.3d 99, 112 (2d Cir. 2000); Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.").  Although the undersigned finds that plaintiff cannot claim monetary damages against defendant Ellis under the HRL, supra at 9, he may be able to make non-monetary individual claims against Ellis under the HRL.[8]  Thus, it is recommended that plaintiff's claims against Ellis under state law be dismissed without prejudice to plaintiff should he wish to bring such claim in a state court action.  See generally Pellegrini v. Soverign Hotels, Inc., 740 F. Supp. 2d 344 (N.D.N.Y. 2010) (discussing situations in which individual employees may be held individually liable under N.Y. Exec. Law 296).

---

[7] Although the undersigned concludes that the Court cannot reach the merits of such a claim, the undersigned does note that plaintiff makes no reference to the ADA.  He further makes no allegation that he requested a reasonable accommodation for his hearing loss, and that such request was denied.  Thus, even if plaintiff intended to allege such a claim and if sovereign immunity was not a bar, his amended complaint fails to sufficiently set forth this claim.

[8] The undersigned makes no comment about the merits of these claims under the HRL or their viability.

10

### III. Conclusion

**WHEREFORE**, it is hereby

**RECOMMENDED**, that plaintiff's second amended complaint be **DISMISSED WITH PREJUDICE**, except that plaintiff's claim under the HRL against defendant Ellis be dismissed without prejudice to plaintiff commencing this claim in state court for non-monetary damages should he wish to do so; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order, together with the unpublished case law cited therein, on plaintiff in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**IT IS SO ORDERED.**

Dated: July 10, 2017
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge

11